758 So.2d 1010 (2000)
Herman L. WILLIAMS and Eisibe Williams, Plaintiffs-Appellees,
v.
U.S. AGENCIES CASUALTY INSURANCE COMPANY, INC., et al., Defendants-Appellants.
No. 33,200-CA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
*1012 Thomas E. Gibbs, Baton Rouge, Counsel for Defendants-Appellants.
Lawrence K. McCollum, Shreveport, Counsel for Plaintiffs-Appellees.
Before CARAWAY, PEATROSS and SAMS (Pro Tempore), JJ.
SAMS, J., Pro Tempore.
Following a bench trial, the District Court found, as a matter of law, that a "named driver" exclusion of an automobile insurance policy cannot exclude the named insured of a vehicle from coverage for the negligent operation of the insured vehicle. U.S. Agencies appeals this ruling and the resulting judgment granting damages to Plaintiffs, Herman and Eisibe Williams. The Williams answer the appeal, claiming that the damages awarded were inadequate. For the reasons expressed herein, we affirm.

Factual Background
On April 12, 1997, the Williams suffered personal injuries in a hit-and-run automobile accident between their vehicle and a 1980 Oldsmobile operated by William N. Beaudoin. Prior to trial, Beaudoin stipulated that he was the owner and operator of the vehicle involved in the collision with the Williams and that he was legally at fault. Although it was also stipulated that Beaudoin's vehicle was insured with U.S. Agencies in a policy issued November 22, 1996, this policy contained a "named driver" exclusion which purported to exclude him from insurance coverage under the policy. Relying on this exclusion to deny coverage, U.S. Agencies denied the Williams' claims and answered their subsequent lawsuit. The Williams also sued their UM insurer, Allstate, who denied coverage because the Williams had not proven the non-existence of responsible party's primary coverage, a prerequisite for their UM coverage to be invoked.
At trial, the District Court found, as a matter of law, that the "named driver" exclusion excluding Beaudoin from coverage was invalid and contrary to public *1013 policy, and granted judgment in the Williams' favor and against U.S. Agencies. Since the judgment was within Beaudoin's policy limits with U.S. Agencies, Allstate was dismissed. U.S. Agencies appeals this decision. In their answer, the Williams claim that the general damages awarded to them were inadequate and that they are each entitled to an award of consortium damages.

Discussion The "Named Driver" Exclusion
The compulsory insurance law, La. R.S. 32:861, requires that every motor vehicle registered in this state, with limited exceptions, be covered by an automobile liability policy. The purpose of this compulsory law is not to protect the vehicle owner or operator against liability, but to provide compensation for persons injured by the operation of insured vehicles. Fields v. Western Preferred Cas. Co., 437 So.2d 344, 346 (La.App. 2d Cir.), writ denied, 440 So.2d 754 (1983). Generally, insurance companies are free to limit coverage in any manner they so desire, so long as the limitations do not conflict with statutory provisions or public policy. Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983); Oceanonics, Inc. v. Petroleum Distrib. Co., 292 So.2d 190 (La.1974). Exclusions, however, are to be strictly construed against an insurer and any ambiguity is construed in favor of coverage. Ledbetter v. Concord General Corp., 95-0809, (La.1/6/96), 665 So.2d 1166, amended, (La.4/18/96), 671 So.2d 915.
In making its argument that the "named driver"exclusion of Beaudoin's policy was valid, U.S. Agencies does not deny that La. R.S. 32:900 B(2) provides that all automobile owner's liability policies in this state:
Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle ...
Similarly, U.S. Agencies does not deny that historically, the exclusion of a named driver who was a member of the insured's household was considered unenforceable on public policy grounds. U.S. Agencies points out, however, that La. R.S. 32:900 was amended in 1992 by the addition of subsection L which created an exception to this jurisprudence, providing that:
Notwithstanding the provisions of Paragraph B(2) of this Section, an insurer and an insured may by written agreement exclude from coverage any named person who is a resident of the same household as the named insured.
In support of its argument, U.S. Agencies notes that section L has been upheld against public policy challenges where a policy holder attempted to exclude a member of his household. See, e.g., Bellard v. Johnson, 97-0909 (La.5/30/97), 694 So.2d 225. As such, U.S. Agencies claims that section L should similarly apply to the named insured because he "is a resident of the same household as the named insured." In its supplemental brief, in further support of its position, U.S. Agencies cites Smyre v. Progressive Security Ins. Co., 98-518, (La.App. 5th Cir. 12/16/98), 726 So.2d 984, writ denied, 99-0139 (La.6/4/99), 745 So.2d 14, a Fifth Circuit case which upheld a similar exclusion. Reasoning that it would be unreasonable to require a person to pay premiums to cover a vehicle owner who cannot drive due to incapacity or a legal impediment, the Fifth Circuit concluded that such an exclusion was not prohibited by the compulsory insurance law or public policy.
Although Smyre is the only reported case directly addressing this issue, we do not agree with the overly broad construction of the term "any named person" in subsection L as suggested by U.S. Agencies or the Fifth Circuit. La. R.S. 32:900 B(2) clearly requires, inter alia, that a policy provide coverage for "the person *1014 named therein"the named insured. Subsection L refers specifically to the exclusion of coverage "for any named person" who is a "resident of the same household as the named insured"which clearly contemplates that the excluded person be distinct from the "named insured" yet still a resident of his household, as distinguished from a permissive user who would be covered under La. R.S. 32:900 B(2). See, Safeway Ins. Co. v. Johnson, 28,150 (La.App. 2d Cir. 1/24/96), 666 So.2d 1300 (construing subsection L as creating a right for a named insured alone to exclude other members of his household from coverage.) As such, U.S. Agencies' interpretation of this section requires a semantic leap requiring a conclusion that the legislature intended that the named insured fall under the "any person" language of subsection L, a conclusion we are unwilling to make in this case. Put simply, had the legislature intended to permit a named insured to contract out of his own liability, it could easily have done so in unambiguous terms.
Analogous jurisprudence regarding the issuance of policies excluding coverage for unlicensed drivers has held that such exclusions, when they operate to exclude the named insured because he had an invalid driver license, are unenforceable because they contravene the purpose of La. R.S. 32:900 B(2) and La. R.S. 22:655 D, which is to provide compensation for persons injured by the operation of insured vehicles. Adams v. Thomas, 98-2003 (La.4/13/99), 729 So.2d 1041. As the Louisiana Supreme Court reasoned, if such exclusions were upheld, an entire class of drivers who would otherwise be covered by the omnibus clause of the insurance policies would be excluded, thereby creating an impermissible restriction on the intent and purpose of the compulsory insurance law. Id. at 1044.
As such, we find no compelling reason to draw a distinction between this jurisprudence and the present case and apply the same reasoning to policy exclusions similarly attempting to exclude a named insured from coverage under a policy. Otherwise, a named insured with a poor driving record or suspended/revoked license could simply exclude himself from coverage, pay a nominal premium, and still comply with the compulsory insurance law and legally register his vehicle. Although this person may nevertheless elect to drive his vehicle, as did Beaudoin in the instant case, the effect of the exclusion would, like the "unlicensed driver" exclusion in Adams, be to controvert the public policy embodied in the legislative intent underlying La. R.S. 32:900 B(2). Accordingly, we find the exclusion contrary to public policy; it is therefore invalid. This assignment of error has no merit.

Quantum
The trial court awarded Mr. Williams $2,700.00 in general damages and $2,552.78 in medical specials and awarded Mrs. Williams $3,500.00 in general damages and $2,687.19 in medical specials. In brief, the Williams contend that the general damages awarded inadequately compensate them for all their injuries.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App.2d Cir. 9/25/96), 680 So.2d 1333, writs denied, 96-2592, 96-2599 (La.12/13/96), 692 So.2d 376, 1063. A trier of fact has much discretion in the assessment of damages in tort cases. La. C.C. art. 2324.1. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that an appellate court should *1015 increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering. Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.), writ denied, 580 So.2d 923 (1991).
If an articulated analysis of the facts discloses such an abuse of discretion, then examination of prior awards in similar cases is proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Dixon v. Tillman, 29,483 (La.App. 2d Cir. 5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174; Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La. App. 2d Cir.1987). Whether an award is excessive depends upon whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Manuel v. State Farm Mut. Auto. Co., 30,765 (La. App.2d Cir. 8/19/98), 717 So.2d 277.
After reviewing the record, we conclude that the trial court did not abuse its broad discretion in awarding general damages. On the day of the accident, Mr. Williams was taken by ambulance to the Willis Knighton Hospital Emergency Room where he was diagnosed with a cervical strain and contusions to the left shoulder area. Subsequently, he received standard chiropractic treatment on two occasions for cervical and thoracic soft tissue injury. He then sought treatment with Dr. Baer Rambach, an orthopedic surgeon, who diagnosed Mr. Williams as having a soft tissue injury to the cervical region as well as in the trapezius muscle groups bilaterally. Dr. Rambach prescribed a cervical pillow, pain medication, and physical therapy. At trial, Mr. Williams testified that he completed five physical therapy sessions over a period of approximately one month but failed to continue treatment because of a family emergency. He also testified that his pain continued for approximately two months after his last treatment, but that he was not restricted from work, was not placed on light duty, and did not miss any work. As such, facially, the award is sufficiently reasonable as not to require an examination of similar awards in similar cases. However, our examination of recent awards for analogous injuries strengthens our conclusion that the award is not inadequate and was not an abuse of the judge's discretion. For example, in Jones v. Thomas, 27,140 (La.App.2d Cir.8/23/95), 660 So.2d 86, writ denied, 95-2351 (La.12/8/95), 664 So.2d 426, this court affirmed a general damage award of $2,500.00 to a plaintiff in an auto accident who suffered muscle strain of neck, back, and shoulder as well as a contusion of the left hip, lacerations of the left hand and left side of the face, requiring her to miss two and one-half weeks of work and which injuries were resolved within two to three months of the accident. Likewise, in Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.), writ denied, 619 So.2d 547 (La.1993), $3,500.00 was awarded to a plaintiff who suffered injuries to neck, wrist, middle back and knees and had to cut back on his work as a barber for several weeks following an auto accident. In the present case, Mr. Williams was treated conservatively and achieved full recovery within five months of the accident, sustaining no residual injuries, pain, or loss of income. We cannot, therefore, conclude that the trial court erred in its award.
Following the accident, Mrs. Williams was also taken by ambulance to the Willis Knighton Emergency Room. She *1016 was treated at the emergency room and subsequently by Dr. Tom Nosser with complaints of lower back, left hip, right hand and wrist, neck, and knee area pain. After conservative treatment with Dr. Nosser, Mrs. Williams also sought treatment with Dr. Rambach, who diagnosed additional soft tissue and cervical strain, prescribing medication and physical therapy. By her final visit in June, 1997, her condition had improved, but she still had complaints. Like her husband, she discontinued physical therapy due to a claimed family emergency. As such, the district court was clearly within its discretion in rejecting Mrs. Williams' testimony regarding the extent of her injuries and reasons for her lack of continued therapy. Accordingly, the amount awarded by the trial court was commensurate with the conservative treatment prescribed for Mrs. Williams, as well as the lack of demonstrable residual impairment; it is therefore not manifestly erroneous.

Loss of Consortium Claims
Next, the Williams argue that the trial court fell into error by failing to award them damages for loss of consortium. They base their argument on Mrs. Williams' testimony of the impact of her injuries on the relationship with her husband. She testified that she was irritable, unable to have sex as frequently as before the accident, and was unable to complete her housework. No other testimony was offered to substantiate the Williams' claims for loss of consortium.
In general, a claim for loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, (6) loss of aid and assistance, and (7) loss of fidelity. Bell v. USAA Cas. Ins. Co., 30,172 (La.App.2d Cir.1/21/98), 707 So.2d 102, 110, writs denied, 98-0712, 98-0766 (La.5/8/98), 718 So.2d 433, 434; Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed only if there is a clear showing of an abuse of discretion. Rudd v. Atlas Processing Refinery, 26,048 (La.App. 2d Cir.9/21/94), 644 So.2d 402, 411, writ denied, 94-2605 (La.12/16/94), 648 So.2d 392; Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817 (La.App. 2d Cir.1993).
In the instant case, although Mrs. Williams testified that her sexual relationship and ability to perform housework was impaired to a degree for the five months of her recovery, plaintiffs presented no evidence of an actual loss of material services, nor was testimony presented suggesting a strained marriage, loss of love and affection, or a continuing lack of sexual relations. As such, we agree with the court in Finley, supra, that while "every personal injury tends to decrease the parties' overall happiness," it is the plaintiff who carries the burden of proving a definite loss on each element of damage. Upon the evidence presented, we cannot find that the trial court erred in failing to make an award for loss of consortium. This assignment of error lacks merit.

Conclusion
For the reasons expressed herein, the judgment of the District Court is AFFIRMED. Costs of this appeal are assessed equally to U.S. Agencies and to the Williams.
AFFIRMED.