499 So.2d 1350 (1986)
Romaine SMITH
v.
Willie LEWIS and Production Management Industries, Inc.
No. 85-CA-730.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1986.
Writ Denied March 20, 1987.
Edward F. Kohnke, New Orleans, for defendants-appellees PMI & North-West Ins. Co.
*1351 Greg S. Abramson, New Orleans, for defendant-appellee Willie Lewis.
Kevin O'Bryon, New Orleans, for defendant-appellee Chicago Ins. Co.
James H. Minge, New Orleans, for plaintiff-appellant Romaine Smith.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
Appellant is Miss Romaine Smith, a passenger in an automobile being driven by Willie Lewis when Lewis fell asleep at the wheel, drove off the roadway and ran into a concrete seawall.
Miss Smith, who was seriously injured, filed suit for damages against Lewis, alleging negligence, and against Lewis' employer, Production Management Industries, Inc., contending that Lewis had been acting in the course and scope of his employment, making PMI vicariously liable under a theory of respondeat superior.
The case was tried on April 10, 11 and 12, 1985 before a 12-person jury, which rendered a $192,500.00 verdict in favor of Miss Smith and against Lewis. The jury found that Lewis had not been functioning within the course and scope of his employment while driving his car; therefore, PMI was not liable. We affirm the jury's finding that Lewis was not acting within the course and scope of his employment, and we raise the award in favor of Miss Smith and against Lewis to $367,500.00.
On appeal, Miss Smith presents three issues for review:
(1) Whether Lewis was acting in the course and scope of his employment;
(2) Whether the jury verdict was adequate, and
(3) Whether this Court should remand for a new trial or decide the case on the record before it.
PMI, at the time of this accident, was engaged in the business of sandblasting, painting and coating offshore drilling platforms. Its main office was situated on Engineers Road in Belle Chasse, Louisiana. Crews were sometimes dispatched from there to Leeville, where they were picked up and taken offshore by helicopters owned by various oil companies.
Ordinarily, some PMI crew members would meet at the main office on Engineers Road and await some form of transportation to Leeville. Lewis testified that 90 per cent of the time he was driven from Belle Chasse to Leeville in a PMI carryall van but on the day of the sued-on accident he was driving his personal auto to Leeville. A company van had not been available.
Two other PMI employees, Anthony Evans and Mark Stewart, were in the car, along with Miss Smith, who planned to drive Lewis' vehicle back home once the men were dropped off in Leeville. A box marked "Property of PMI" containing work gloves and cigarettes for crew members' use was placed in the trunk of the car. Unfortunately, Lewis negligently dozed off near the town of Golden Meadow and the accident occurred.
A number of witnesses testified during the three-day trial on the course and scope issue and whether PMI had a company policy concerning transportation from Belle Chasse to Leeville. Appellant tried to show that employees were prohibited from using personal automobiles, that Lewis' car was being used as a replacement vehicle and that Lewis was acting as a replacement driver on a special errand.
Other testimony, however, indicated that the majority of PMI crew members were free to and did in fact drive their own vehicles to Leeville without first going to the Engineers Road office.
If a PMI van was going from Belle Chasse to Leeville or from Leeville back to Belle Chasse, crew members could hitch a ride. Transportation was not guaranteed and Lewis testified that on at least one occasion he had to hitchhike home from Leeville because neither the van nor any other ride was available.
Uncontradicted testimony was that PMI employees were not reimbursed for gas or mileage when they drove their personal *1352 cars to Leeville. Also uncontradicted was the fact that crew members did not go on the company payroll until they reached Leeville.
On the day of the accident, Lewis' salary was to begin at 6 a.m. when he reached Leeville. He ran off the highway some time between 3 a.m., when he left Belle Chasse, and before reaching Leeville.
It is well settled that an employer is not responsible for acts or omissions of an employee under respondeat superior unless the alleged tort was committed in the course and scope of the negligent employee's employment. See Puccio v. Finch, 454 So.2d 272 (La.App. 4th Cir.1984), and many other cases. Whether an employee is or is not acting within the course and scope of the employment is a factual question to be decided on the circumstances of each case. Usually, an employee going to and from work is not within the course and scope of employment, particularly if the employee is not being paid mileage or any kind of per diem and is not performing an activity necessitated by or arising out of the nature of the employment.
Ultimately, the course and scope issue is a question of fact to be determined by the judge or jury. See Michaleski v. Western Preferred Cas. Co., 472 So.2d 18 (La.1985) and Jewell v. Thompson, 386 So.2d 689 (La.App. 3rd Cir.1980), writs denied at 393 So.2d 746 (La.1980).
Here, the jury obviously found that Lewis was neither a replacement driver nor on a special mission for PMI, that there was no company policy requiring crew members to meet in Belle Chasse, that transportation between Belle Chasse and Leeville was not guaranteed and was not provided as a term of employment and that, consequently, Lewis was not within the course and scope of his employment while driving his personal car to Leeville. We are compelled by Arceneaux v. Domingue et al., 365 So.2d 1330 (La.1978), to affirm these district court findings unless they are clearly wrong, and we cannot say that they are manifestly erroneous. To the contrary, the testimony and evidence support the jury's conclusions, despite some clashing testimony.
Lewis testified that Freddie Slaughter, a PMI superintendent, had telephoned him and instructed him to pick up Evans and Stewart in Belle Chasse. Slaughter denied this, saying instead that he had called Lewis only to tell him that the company van was not going to be available. Lewis did testify that there was no company policy requiring him to either drive his own car or catch the van.
In any event, the jury's finding that Lewis was not acting within the course and scope of his PMI employment when Miss Smith was injured is well substantiated by testimony and evidence. There is no testimony indicating that PMI had any meaningful control over Lewis (or any other employee) until he reached Leeville and his salary started.
Stewart, the PMI foreman who was in Lewis' car, testified that he was able to catch a ride to Leeville in the company van approximately 50 per cent of the time, but that if the van wasn't there it was up to him to find other transportation. He did not depend on PMI to get him to Leeville although Slaughter often helped out, as he did on the night of this accident.
The box marked "Property of PMI" placed in Lewis' car contained ordinary work gloves and cigarettes, items appellee contends were for personal rather than company benefit. Obviously the jury did not conclude that this was enough to tip the evidentiary scale in Miss Smith's favor although this box-carrying may have been at least a slight indication that Lewis was acting within the course and scope of his employment.
Appellant asserts that the jury erred on the course and scope issue because of several erroneous evidential rulings by the trial judge and because of improper jury instructions. Even if these contentions were accurate, and we are not saying they are, the complete record is before us and we cannot say that Miss Smith proved by a preponderance of the testimony and evidence *1353 that Lewis was acting within the course and scope of his PMI employment. See Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), which requires an appellate court to decide a case on the record, if it is complete, rather than remand to the trial court.
We turn now to the judgment in favor of Miss Smith against Lewis, which was thusly itemized:
$100,000.00past, present and future medical expenses;
$ 50,000.00past, present and future physical pain and suffering;
$ 50,000.00past, present and future mental pain and suffering; and
$ 17,500.00past, present and future disability.
Lewis did not answer this appeal. He testified at trial that he has no assets other than personal belongings and a 1981 Buick Regal he is still paying for. He is unemployed about half the time and has neither a checking nor savings account.
Appellant argues that Lewis' admitted poverty deprived her of a just award. Miss Smith sustained painful and permanent hip and leg injuries necessitating various surgical procedures and extended hospitalizations. She now has no feeling in one hip and she wears a brace on her right foot to prevent it from hanging limp.
The awards for physical and mental pain and suffering were grossly inadequate. We increase the award for past, present and future physical pain and suffering to $150,000.00 and the award for past, present and future mental pain to $100,000.00.
For these reasons, we (1) affirm the jury's finding of no liability on PMI's part and (2) increase the award to Miss Smith against Lewis to $367,500.00 plus legal interest from date of judicial demand until paid. Miss Smith is to bear costs of this appeal.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.
KLIEBERT, Judge, concurring in part and dissenting in part.
I concur in the majority view that the defendant, Willie Lewis, was not acting in the course and scope of his employment with Production Management Industries, Inc. at the time of the accident sued on. Further, in my view, although on the lower end of the jury's discretionary award for the damages sustained by the plaintiff, based on the record before us, I cannot say the jury abused its discretion in setting the amount of the award. Accordingly, I would affirm the jury's finding on liability and on the damage award.